| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **JUDGE SWAIN**<br>Case No. **07 CIV 6865** |
| INDYMAC BANK, F.S.B., : <br>  Plaintiff, : <br> — against — : <br> NATIONAL SETTLEMENT AGENCY, INC.; : <br> STEVEN M. LEFF; RACHEL M. LEFF; <br> RICHARD A. LEFF; JOHN DOES 1–100, : <br>  Defendants. : | **COMPLAINT**<br>**(WITH JURY DEMAND)** |



Plaintiff IndyMac Bank, F.S.B., by its attorneys, for its complaint, alleges as follows:

**Parties**

1.  Plaintiff IndyMac Bank, F.S.B. ("IndyMac") is a federal savings bank, maintaining a principal place of business at 155 North Lake Avenue, Pasadena, California 91101.

2.  Defendant National Settlement Agency, Inc. ("National Settlement") is a domestic business corporation, and upon information and belief, maintains or maintained a principal place of business at 404 Park Avenue South, 5th Floor, New York, NY 10016 and also did or does business out of 575 Madison Avenue, Suite 1006, New York, NY 10022 and 15 Anvil Ct. 15, East Hampton, NY 11937.

3.  Defendant Steven M. Leff is an individual and, upon information and belief, is the president of National Settlement, and maintains a principal residence at 15 Anvil Ct. 15, East Hampton, NY 11937.

4.  Defendant Rachel M. Leff is an individual and, upon information and belief, is the chief executive officer of National Settlement, is the wife of Steven M. Leff, and maintains a principal residence at 15 Anvil Ct. 15, East Hampton, NY 11937.

5.  Defendant Richard A. Leff is an individual and, upon information and belief, is an attorney licensed in the State of New York, the brother of Steven M. Leff, and resides at 10 Park Road, Short Hills, NJ 07078.

### Jurisdiction

6.  This court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because IndyMac, a citizen of the State of California pursuant to 12 U.S.C. §§ 1462(5) and 1464(x), and the defendants are citizens of different states, and the value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

7.  Venue in this court is proper under 28 U.S.C. § 1391(a).

### Facts

8.  IndyMac is in the business of funding residential mortgages.

9.  In connection with the funding of certain mortgages in June and July of 2007, defendants undertook to act, and acted as, IndyMac's closing agents.

10. Defendants, acting as IndyMac's closing agents, had the legal obligation, at the time of the closing of each mortgage, to disburse to IndyMac's borrowers and other payees, according to IndyMac's closing instructions, the specific funds that IndyMac had wired in trust to one of National Settlement's accounts at the Chase Manhattan Bank: (1) "National Settlement Agency, Inc., Attorney Escrow Funding Account" Account No. 904613917, ABA No. 021000021; or (2) "National Settlement Agency, Inc., Attorney Funding Account – Gen" Account No. 987096757765, ABA No. 021000021 (collectively "the accounts").

11. In June and July of 2007, upon information and belief, defendants converted or allowed to be converted, approximately $2.3 million of IndyMac's funds that had been wired into the accounts for defendants to disburse or cause to be disbursed to IndyMac's borrowers and other designated payees at several mortgage closings. Those mortgage closings are described in more detail below.

The Holder Mortgage #1 (Loan No. 126888382)

12. IndyMac agreed to make a loan to Cedric and Joan Holder ("Holder") in the amount of $555,000, to be secured by a mortgage on the real property located at 1072 E. 14th Street, Brooklyn, NY 11230.

13. This mortgage was scheduled to close on or about June 26, 2007.

14. Defendants acted as the closing agents for this mortgage.

15. IndyMac wired funds to Account No. 987096757765 and provided defendants with specific instructions for its disbursement to Holder and other payees.

16. Several checks were drawn, or should have been drawn, by defendants upon these funds, totaling $508,232; these checks were either dishonored upon presentment because of insufficient funds in Account No. 987096757765, or were never sent to the payee:

   a. $471,478 to America's Servicing Co.;

   b. $8,298 to Discover Financial;

   c. $7,685 to HFC-USA;

   d. $6,236 to American Express;

   e. $5,920 to American Express;

   f. $3,334 to Sears;

   g. $2,548 to Sears;

  h. $2,343 to Capital One Bank;

  i. $390 to American Express

 17. Upon information and belief, defendants secreted this $508,232 for their own personal uses instead of disbursing this money as IndyMac had directed.

<u>The Holder Mortgage #2 (Loan No. 126852120)</u>

 18. IndyMac agreed to make a loan to Cedric and Joan Holder ("Holder") in the amount of $495,000, to be secured by a mortgage on the real property located at 1074 E. 14th Street, Brooklyn NY 11230.

 19. This mortgage was scheduled to close on or about June 26, 2007.

 20. Defendants acted as the closing agents for this mortgage.

 21. IndyMac wired funds to Account No. 987096757765 and provided defendants with specific instructions for its disbursement to Holder and other payees.

 22. A check drawn, or that should have been drawn, by defendants upon these funds, in the amount of $453,421 to AMC Mortgage Services was either never sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 987096757765.

 23. Upon information and belief, defendants secreted this $453,421 for their own personal uses instead of disbursing this money as IndyMac had directed.

<u>The Packard Mortgage (Loan No. 126712948)</u>

 24. IndyMac agreed to make a loan to John and Rae Packard ("Packard") in the amount of $1,435,000, to be secured by a mortgage on the real property located at 747 Remsens Lane, Muttontown, NY 11771.

 25. This mortgage was scheduled to close on or about June 29, 2007.

 26. Defendants acted as the closing agents for this mortgage.

27.     IndyMac wired funds to Account No. 904613917 and provided defendants with specific instructions for its disbursement to Packard and other payees.

28.     A check drawn, or that should have been drawn, by defendants upon these funds, in the amount of $1,074,111 to Chase Home Finance was either never sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 904613917.

29.     Upon information and belief, defendants secreted this $1,074,111 for their own personal uses instead of disbursing this money as IndyMac had directed.

The Penny Mortgage (Loan No. 126383851)

30.     IndyMac agreed to make a loan to Marcia Penny and Juanita Bartley ("Penny") in the amount of $369,000, to be secured by a mortgage on the real property located at 315 State Avenue, Wyandanch, NY 11798.

31.     This mortgage was scheduled to close on or about June 13, 2007.

32.     Defendants acted as the closing agents for this mortgage.

33.     IndyMac wired funds to Account No. 904613917 and provided defendants with specific instructions for its disbursement to Penny and other payees.

34.     Two checks drawn, or that should have been drawn, by defendants upon these funds, totaling $311,642 were either never sent to the payees or were dishonored upon presentment because of insufficient funds in Account No. 987096757765:

   a. $277,926 to Option One Mortgage;

   b. $33,716 to Honda Finance.

35.     Upon information and belief, defendants secreted this $311,642 for their own personal uses instead of disbursing this money as IndyMac had directed.

The Scali Mortgage (Loan No. 126739313)

36. IndyMac agreed to make a loan to Rocco Scali ("Scali") in the amount of $200,000, to be secured by a mortgage on the real property located at 260 Holdridge Ave, Staten Island, NY 10312.

37. This mortgage was scheduled to close on or about June 15, 2007.

38. Defendants acted as the closing agents for this mortgage.

39. IndyMac wired funds to Account No. 904613917 and provided defendants with specific instructions for its disbursement to Scali and other payees.

40. A check drawn, or that should have been drawn, by defendants upon these funds, in the amount of $1,744 to Nationwide Insurance was either never sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 904613917.

41. Upon information and belief, defendants secreted this $1,744 for their own personal uses instead of disbursing this money as IndyMac had directed.

**Count I**
**Breach of Contract**
**Against all Defendants**

42. IndyMac incorporates paragraphs 1–41 as if fully set-forth herein.

43. Defendants had an implied-in-fact contract with IndyMac whereby defendants would act as the closing agents for IndyMac at and in connection with the above specified closings in exchange for a fee.

44. Defendants, as part of their contract with IndyMac, agreed to hold in trust the funds that IndyMac would wire into the accounts, and to disburse those funds only in accordance with IndyMac's instructions.

45. By failing to disburse, and converting, funds wired to defendants by IndyMac,

defendants breached their contract with IndyMac.

46. By reason of this breach, IndyMac has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $2,349,150.

### Count II
### Conversion
### Against all Defendants

47. IndyMac incorporates paragraphs 1–46 as if fully set-forth herein.

48. IndyMac entrusted funds to defendants for the express and sole purpose of disbursing those funds in connection with the above described mortgages.

49. Rather than the funds being disbursed to the payees designated by IndyMac, defendants, upon information and belief, each individually and jointly exercised dominion and control over IndyMac's funds by using those funds for their own purposes.

50. Defendants had no legal, equitable, or other right to use the funds for anything other than disbursement in connection with the mortgages in accordance with IndyMac's instructions.

51. As a result of this conversion, IndyMac has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $2,349,150.

### Count III
### Fraud
### Against all Defendants

52. IndyMac incorporates paragraphs 1–51 as if fully set-forth herein.

53. Upon information and belief, defendants agreed to conduct the above mortgage closings for IndyMac, while having no present intention to actually close the mortgages according to IndyMac's instructions.

54. Upon information and belief, defendants thereby knowingly and intentionally

misrepresented to IndyMac that they would disburse funds as instructed.

55. Defendants made these misrepresentations with the intent to induce IndyMac into wiring funds to defendants so that they could convert those funds.

56. IndyMac, reasonably relying upon these material misrepresentations, wired funds to defendants to be disbursed by defendants at the mortgage closings.

57. Upon information and belief, defendants, as was their intention when they agreed to close the mortgages for IndyMac, did not disburse the funds according to IndyMac's instructions, and thereby damaged IndyMac in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

### Count IV
### Breach of Fiduciary Duty
### Against all Defendants

58. IndyMac incorporates paragraphs 1–57 as if fully set-forth herein.

59. Defendants, having undertaken to act, and having acted as, IndyMac's closing agents in connection with the above described mortgages, owed a duty to IndyMac to perform their closing functions with the utmost degree of care, skill, and diligence.

60. Defendants breached their fiduciary duty by drawing checks upon insufficient funds.

61. Defendants breached their fiduciary duty by converting the funds that had been wired in trust into the account.

62. Defendants breached their fiduciary duty by not redrawing dishonored checks, or checks that were never delivered to the designated payees, upon good funds.

63. Defendants breached their fiduciary duty by failing to supervise those under their control who contributed to IndyMac's losses.

64. These breaches of fiduciary duty were the proximate cause of IndyMac's losses, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

### Count V
### Negligence
### Against all Defendants

65. IndyMac incorporates paragraphs 1–64 as if fully set-forth herein.

66. Defendants each jointly and severally owed a duty to IndyMac to ensure that the funds entrusted to defendants for disbursement at the mortgage closings described herein were in fact present in the accounts upon which checks were drawn, and to ensure that all necessary checks were drawn and sent to the designated payees at or immediately after closing.

67. Defendants breached this duty by not ensuring that sufficient funds were available in defendants' accounts to cover the checks drawn by defendants at the closings described herein and by failing to deliver checks to the designated payees.

68. As a proximate cause of this breach of the duty of care, IndyMac has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

### Count VI
### Unjust Enrichment
### Against all Defendants

69. IndyMac incorporates paragraphs 1–68 as if fully set-forth herein.

70. Defendants, upon information and belief, all wrongfully benefited from IndyMac's wiring of mortgage disbursement funds to them by enjoying portions of those funds for their own personal use.

71. None of the defendants were the intended beneficiaries of IndyMac's mortgage

disbursement funds.

72. In equity and good conscience, defendants must return IndyMac's funds.

73. As a result of this unjust enrichment, IndyMac has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $2,349,150.

## Count VII
## Money Had and Received
## Against all Defendants

74. IndyMac incorporates paragraphs 1–73 as if fully set-forth herein.

75. Defendants received from IndyMac an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

76. That money should have been paid to IndyMac's designated beneficiaries.

77. Not having been paid to IndyMac's designated beneficiaries, that money still belongs to IndyMac and IndyMac is legally and equitably entitled to its return.

78. It is against equity and good conscience to allow defendants to retain that money.

79. IndyMac has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $2,349,150.

**WHEREFORE**, IndyMac respectfully demands judgment as follows:

1. On Count I of the complaint (Breach of Contract), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

2. On Count II of the complaint (Conversion), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

3. On Count III of the complaint (Fraud), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

4. On Count IV of the complaint (Breach of Fiduciary Duty), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

5. On Count V of the complaint (Negligence), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

6. On Count VI of the complaint (Unjust Enrichment), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

7. On Count VII of the complaint (Money Had and Received), joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $2,349,150.

8. An order preliminarily enjoining and restraining the transfer of any assets held by the defendants pending final judgment in this action.

9. Any other relief that this Court deems just and proper, together with the costs, disbursements, and attorney's fees incurred in this action.

### Jury Demand

Plaintiff demands a trial by jury.

Dated: New York, New York  
July 31, 2007

FELDMAN WEINSTEIN & SMITH LLP  
Attorneys for Plaintiff

By: _____  
Eric Weinstein (EW 5423)  
David J. Galalis (DG 1654)  
420 Lexington Avenue, Ste. 2620  
New York, NY 10170  
(212) 869-7000