UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INDYMAC BANK, F.S.B., : Case No.: 07 cv 6865 (LTS)
:
                 Plaintiff,
:
– against –
:

NATIONAL SETTLEMENT AGENCY, INC.; :
STEVEN M. LEFF; RACHEL M. LEFF;
RICHARD A. LEFF; JOHN DOES 1–100, :

                Defendants. :

:

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF INDYMAC BANK'S MOTION FOR AN ORDER OF ATTACHMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED THIRD-PARTY DISCOVERY

FELDMAN WEINSTEIN & SMITH LLP
Eric Weinstein (EW 5423)
David J. Galalis (DG 1654)
420 Lexington Avenue, Ste. 2620
New York, NY 10170
(212) 869-7000

Plaintiff IndyMac Bank, F.S.B. ("IndyMac"), by its attorneys, respectfully submits this memorandum of law in support of its motion for (i) an order of attachment pursuant to Fed. R. Civ. P. 64, and C.P.L.R. § 6201(3) and 6212, (ii) a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65, and (iii) leave to serve expedited discovery pursuant to Fed. R. Civ. P. 26(d) and 45 upon nonparty banks and financial institutions, among other nonparties, located in the State of New York concerning the location of defendants' assets and transactions underlying defendants' fraud.

## Preliminary Statement

More than two million dollars of IndyMac's money, which it had entrusted to National Settlement Agency ("NSA") for purposes of disbursement at residential real estate closings, has suddenly disappeared without explanation. No one at NSA is returning IndyMac's phone calls. Demands to replace the funds and make good on bounced—or missing—checks from several closings have gone unanswered.

NSA and its officers have already violated the trust placed in them by IndyMac and cannot be trusted any further. In the absence of the order of attachment and injunction being sought here, they will continue to play games with IndyMac's money. Any notice of these proceedings will only hasten their efforts to further frustrate recovery for the blatant theft that they have already perpetrated, thus necessitating a temporary restraining order until IndyMac's application for an attachment can be heard.

## Statement of Facts

The facts pertinent to this motion are set forth in the affidavit of Nicholas J. Nyland and the complaint and exhibits attached thereto.

2

## Argument

I. **ATTACHMENT IS APPROPRIATE, ALONG WITH A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Fed. R. Civ. P. 64 dictates that New York C.P.L.R. Art. 62 governs the provisional remedy of attachment within this district. C.P.L.R. § 6212 sets forth the elements that must be proven by a plaintiff seeking an attachment: (1) that the plaintiff has a cause of action, (2) that it is probable that the plaintiff will succeed on the merits, (3) that one or more grounds for attachment exist, and (4) that the monetary amount demanded from the defendant exceeds all counterclaims known to the plaintiff.[1]

The grounds for attachment are set-out in C.P.L.R. § 6201. Pertinent to this motion is C.P.L.R. § 6201(3): "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Stated otherwise, a plaintiff is entitled to an order of attachment when it has been shown: "that the defendant has, or is about to conceal his or her property in one of the enumerated ways, and that [the] defendant has acted or will act with the intent to defraud his or her creditors or to frustrate the enforcement of a judgment for the plaintiff." *Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986).

The standard for the granting of a temporary restraining order is the same as the standard for a preliminary injunction. *Spencer Trask Software & Info. Servs., LLC v. Rpost Int'l Ltd.*, 190 F.Supp.2d 577, 580 (S.D.N.Y. 2002). Relief is properly granted when the movant establishes

---

[1] Where there is more than one defendant, each element must be proven as to each defendant. C.P.L.R. § 6201; *AMF, Inc. v. Algo Distributors, Ltd.*, 48 A.D.2d 352, 355, 369 N.Y.S.2d 460, 463 (2nd Dep't 1975).

3

that (a) it will likely succeed on the merits of its claims, and (b) that it is probable that it will suffer irreparable harm absent relief.

### A. IndyMac Has a Cause of Action Against Each of the Defendants

The Affidavit of Nicholas J. Nyland (and attachments thereto) set out that approximately $2.3 million dollars was wired into NSA's escrow accounts. That money was never payed-out at five residential mortgage closings, as directed by IndyMac. IndyMac's calls to NSA to find the money have not been responded to. IndyMac clearly has a cause of action against NSA under several theories of recovery: breach of contract, conversion, fraud, breach of fiduciary duty, negligence, unjust enrichment, and money had and received.

As to the individual defendants—all apparently related and in control of NSA (Declaration of David J. Galalis)—IndyMac also has a cause of action, under at least a theory of negligence: as the purported corporate officers of NSA, Steven Leff, Rachel Leff, and Richard Leff were responsible for ensuring that the money wired in trust to NSA's accounts was properly disbursed at each residential mortgage closing. They failed in this duty owed to IndyMac.

### B. It is Probable That IndyMac Will Succeed on the Merits

Defendants can offer no legitimate explanation for their unauthorized use and enjoyment of IndyMac's funds, indicating that attachment is proper. *Mineola Ford Sales Ltd. v. Rapp*, 242 A.D.2d 371, 371–72, 661 N.Y.S.2d 281, 281–82 (2nd Dep't 1997) (employee's diversion of employer's funds for her personal use demonstrated likelihood of ultimate success on the merits and thus warranted prejudgment attachment).

Despite IndyMac's repeated attempts to speak with someone at NSA concerning the missing $2.3 million dollars, no one has responded (Nyland Aff. at ¶ 8). This by itself can properly be inferred as indicating a probability of success on the merits: $2.3 million dollars

went missing, IndyMac informed NSA, and NSA has offered no explanation.

1.   <u>It is probable that IndyMac will succeed on its claim for breach of contract</u>

Each closing instruction and wire sent to NSA constituted a contract whereby NSA agreed to disburse those funds in accordance with those closing instructions. NSA did not do so. It is probable that IndyMac will succeed on its claim for breach of contract against NSA.

2.   <u>It is probable that IndyMac will succeed on its claim for conversion</u>

To succeed on a claim for conversion under New York law, a plaintiff must show that the defendants converted specific and identifiable property, that the plaintiff has the right to possession of the property, and an interference with the plaintiff's rights by the defendant. *Gilman v. Abagnale*, 235 A.D.2d 989, 991, 653 N.Y.S.2d 176, 178 (3d Dep't 1997).

The property identified and described in the Nyland affidavit is the $2.3 million wired into NSA's accounts. IndyMac had the right to possess that property because it was wired to NSA in trust to be disbursed to IndyMac's borrowers. NSA interfered with IndyMac's superior right of possession to IndyMac's own money by not disbursing it as instructed by IndyMac. To the extent that the individual defendants had knowledge of the misappropriation of funds or participated in the misappropriation, they too can be held liable for conversion.

3.   <u>It is probable that IndyMac will succeed on its claim for fraud</u>

To state a claim for fraud, a plaintiff must allege: (1) misrepresentation of a material fact, (2) scienter, (3) justifiable reliance, and (4) injury. *In re Garvin*, 210 A.D.2d 332, 333, 620 N.Y.S.2d 400, 401 (2nd Dep't 1994); *Wilson v. Bristol-Myers Co.*, 118 A.D.2d 50, 61, 503 N.Y.S.2d 334, 341 (1st Dep't 1986).

The material fact misrepresented by NSA was that it intended to disburse money as instructed by IndyMac; it misrepresented as much by accepting wires and closing instructions

from IndyMac while having no present intention to actually close the loans as instructed. IndyMac was injured by wiring money to NSA, reasonably relying on the implicit representation that the money would be disbursed as instructed. To the extent that the individual defendants were the ones who actually accepted the wire instructions and orchestrated the scheme to secrete IndyMac's money, they too will be held liable for fraud.

4. <u>It is probable that IndyMac will succeed on its claim for breach of fiduciary duty</u>

In accepting funds into its escrow account to disburse according to IndyMac's instructions, NSA acted as a fiduciary. By not disbursing those funds, NSA breached its duty to IndyMac.

5. <u>It is probable that IndyMac will succeed on its claim for Negligence</u>

A cause of action for negligence in New York is stated by showing that the defendant owed the plaintiff a duty of care, that the defendant breached this duty, and that the plaintiff suffered harm as a proximate result of the breach. *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997).

A reasonably prudent closing agency, and its officers, would ensure that funds entrusted to it by mortgage banks is disbursed at closing as instructed. NSA, and its officers, did not ensure that funds entrusted to NSA were disbursed at closing as instructed. NSA and its officers therefore breached their duty of care to IndyMac.

6. <u>It is probable that IndyMac will succeed on its claim for Unjust Enrichment</u>

It is well settled that a cause of action for unjust enrichment is stated under New York law when a plaintiff conferred a benefit upon the defendant without the defendant compensating the plaintiff. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 600, 741 N.Y.S.2d 100, 102 (2nd Dep't 2002).

NSA has retained the money entrusted to it by IndyMac for disbursal at closing—without disbursing it—and has therefore received a benefit without compensating IndyMac (i.e., performing closing services as instructed). Likewise, if the officers of NSA have retained the money, they have been unjustly enriched.

7. <u>It is probable that IndyMac will succeed on its claim for Money Had and Received</u>

A claim for money had and received is stated when a defendant received money that equitably should have been paid to, or belongs to, another. *Parsa v. State*, 64 N.Y.2d 143, 148, 485 N.Y.S.2d 27, 29–30, 474 N.E.2d 235, 237–238 (1984).

IndyMac gave money to NSA for the purpose of disbursal at residential mortgage closings. NSA did not disburse that money as instructed. The money still belongs to IndyMac and should therefore be returned.

### C. Grounds for Attachment Exist

The grounds for attachment specified in C.P.L.R. § 6201(3) exist because NSA has already secreted IndyMac's property by receiving $2.3 million in trust to be disbursed at closings, and then failing to do so. NSA has been unresponsive to IndyMac's requests for information. It is a reasonable inference, therefore, that money has already been secreted from NSA's escrow accounts, and will continue to be secreted in the absence of an order of attachment. Moreover, it is a reasonable inference that NSA has hidden this money through its corporate officers—indeed, no explanation to the contrary has been given, despite IndyMac's attempts to seek explanation from NSA. If the officers of NSA are innocent of wrongdoing, then why have they not come forward and explained to IndyMac what happened? Thus, the assets of the individual defendants should also be attached, to prevent the further secretion of IndyMac's assets, and to secure any judgment that should be entered against them.

D.   **The Amount Demanded From Defendants Exceeds all Known Counterclaims**

Nick Nyland has sworn in his affidavit that the amount demanded from the defendants exceeds all known counterclaims. (Nyland Aff. at ¶7).

E.   **It is Probable that IndyMac Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order and Preliminary Injunction**

A movant will suffer irreparable harm when there is a "substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Injunctive relief is also warranted "where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible." *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996).

As the affidavit of Nicholas Nyland demonstrates, the defendants have already tried to frustrate the enforcement of any judgment that IndyMac might obtain. If the defendants are allowed to continue to hide IndyMac's funds, and their own assets, then upon final resolution of this action, IndyMac will not be returned to the position that it previously occupied.

II.   **EXPEDITED DISCOVERY IS NECESSARY AND SHOULD BE GRANTED**

Fed. R. Civ. P. 26(d) permits parties to seek discovery prior to the Rule 26(f) conference with leave of the Court. Although courts in this District have traditionally applied a four-part test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), recent authority suggests "a more flexible 'good cause' test" when a party seeks expedited discovery in aid of preliminary relief. *See, e.g., Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (granting expedited discovery on an *ex parte* basis, and also granting *ex parte* attachment).

IndyMac seeks limited, expedited discovery to locate defendants' assets in New York and to trace the improper transactions. Nonparty discovery regarding bank accounts is normally

8

permitted under Fed. R. Civ. P. 45. *See In re Sumar*, 123 F.R.D. 467, 473–74 (S.D.N.Y. 1988) (requiring nonparty bank to produce documents and a witness for deposition regarding party's assets). If IndyMac is unable to locate and attach those assets on an expedited basis, defendants may well not satisfy an eventual judgment against them.

The expedited access poses no burden to defendants. By contrast, IndyMac will suffer irreparable injury if it cannot collect a judgment against defendants. "[I]rreparable harm is present if it appears that defendants intend[] to frustrate a money judgment by transferring assets in a way that makes the judgment uncollectible." *Computerland Corp. v. Batac, Inc.*, 1988 WL 140816, at *4–5 (S.D.N.Y., Dec. 16, 1988).

IndyMac's fear that the defendants will remove assets in an attempt to evade a potential judgment is hardly far-fetched. Defendants' actions as alleged in the complaint and sworn to in the Nyland affidavit show them to be duplicitous and brazen in their theft of fiduciary funds.

Finally, as discussed *supra*, IndyMac has a probability of success on its claims. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990 (granting expedited discovery on finding a likelihood of success on two of the plaintiff's four claims).

### Conclusion

This court must act to stop the disturbing trend of closing agents absconding with money earmarked for mortgage closings. Having already betrayed IndyMac's trust once, there is no reason to believe that the defendants will keep the money they have stolen sitting in one place for IndyMac to eventually collect at the conclusion of this litigation. This court must act to prevent the further dissipation of whatever assets exist among the defendants, so that the likely judgment to be obtained against them can be collected.

For all the reasons above, IndyMac respectfully requests an order of attachment against the defendants' assets, a preliminary injunction against the transfer or assignment of those assets, an order granting expedited third-party discovery, and until such time as this motion can be heard, a temporary restraining order against the transfer or assignment of the defendants' assets.

Dated: New York, New York
      August 6, 2007

                                          FELDMAN WEINSTEIN & SMITH LLP
                                          Attorneys for Plaintiff

                                          By: _____
                                               Eric Weinstein (EW 5423)
                                               David J. Galalis (DG 1654)
                                               420 Lexington Avenue, Ste. 2620
                                               New York, NY 10170
                                               (212) 869-7000