UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| INDYMAC BANK, F.S.B., | Case No.: 07 cv 6865 (LTS) |
| Plaintiff, | |
| – against – | |
| NATIONAL SETTLEMENT AGENCY, INC.; STEVEN M. LEFF; RACHEL M. LEFF; RICHARD A. LEFF; JOHN DOES 1–100, | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF INDYMAC BANK'S MOTION FOR AN ORDER OF ATTACHMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

FELDMAN WEINSTEIN & SMITH LLP
Eric Weinstein (EW 5423)
David J. Galalis (DG 1654)
420 Lexington Avenue, Ste. 2620
New York, NY 10170
(212) 869-7000

Plaintiff IndyMac Bank, F.S.B. ("IndyMac"), by its attorneys, respectfully submits this memorandum of law in support of its motion for (i) an order of attachment pursuant to Fed. R. Civ. P. 64, and C.P.L.R. § 6201(1), § 6201(3) and 6212, (ii) a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65, and (iii) leave to serve expedited discovery pursuant to Fed. R. Civ. P. 26(d) and 45.

**Preliminary Statement**

Rachel Leff must be called to explain the large-scale transfers with National Settlement Agency, Inc. ("NSA") into and out of her individual account occurring around the time that NSA dissipated over two million dollars of IndyMac's funds.

This is a case of real estate professionals who betrayed the trust of their clients for greed and fraud. Over $2 million of IndyMac's money, which had been entrusted to NSA for purposes of disbursement at residential real estate closings, has suddenly disappeared without explanation. Demands to replace the funds and make good on bounced—or missing—checks from several closings have gone unanswered. No one at NSA has responded to IndyMac's numerous requests for an explanation.

In the absence of the order of attachment and injunction being sought here, the odds increase that IndyMac will not recover its money. Any notice of these proceedings will only hasten their efforts to further frustrate recovery for the blatant theft that they have already perpetrated, thus necessitating a temporary restraining order until IndyMac's application for an attachment can be heard.

1

**Statement of Facts**

The facts pertinent to this motion are set forth in the affidavit of Nicholas J. Nyland, and the accompanying Declaration of Eric Weinstein, dated August 15, 2007 ("Weinstein Dec."). The former outlines the losses IndyMac incurred and its futile attempts to recover those funds or even to communicate with NSA. The latter shows that Rachel Leff is domiciled out-of-state, and that large-scale transfers (of hundreds of thousands of dollars) occurred between her individual bank account and NSA escrow funding accounts around the time that NSA and its principals stole from IndyMac.

**Argument**

I. ATTACHMENT IS APPROPRIATE, ALONG WITH A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Fed. R. Civ. P. 64 dictates that New York C.P.L.R. Art. 62 governs the provisional remedy of attachment within this district. C.P.L.R. § 6212 sets forth the elements that must be proven by a plaintiff seeking an attachment: (1) that the plaintiff has a cause of action, (2) that it is probable that the plaintiff will succeed on the merits, (3) that one or more grounds for attachment exist, and (4) that the monetary amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

A. **Grounds for Attachment Exist**

1. **CPLR § 6201(1)**

The grounds for attachment are set-out in C.P.L.R. § 6201. Pertinent to this motion is CPLR § 6201(1), which permits attachment against an individual defendant who is a nondomiciliary residing without the State of New York.

Rachel Leff is domiciled in Florida. Although the Chase bank account statements for Rachel Leff's individual account indicate that she resides at 15 Anvil Court, East Hampton, New York, that house appears never to have been her primary residence. According to Richard Leff, who is the brother of Steven Leff and brother-in-law of Rachel, (i) the East Hampton house was a summer house, (ii) Steven and Rachel lived in a rental apartment on East 82nd Street in Manhattan, but (iii) they are now involved in a divorce, (iv) Rachel moved to Florida, and (v) Steven is renting an apartment at Trump World Tower in Manhattan. *See* Weinstein Dec., ¶ 6, Ex. E.

Even where the defendant has a house of abode in this state where service of process can be made, § 6201(1) is available "to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures." *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983).

2.   **CPLR § 6201(3)**

Also pertinent is C.P.L.R. § 6201(3): "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Stated otherwise, a plaintiff is entitled to an order of attachment when it has been shown: "that the defendant has, or is about to conceal his or her property in one of the enumerated ways, and that [the] defendant has acted or will act with the intent to defraud his or her creditors or to frustrate the enforcement of a judgment for the plaintiff." *Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986).

3

Preliminary, expedited third-party discovery from Chase reveals large-scale transfers of funds between Rachel Leff and NSA escrow funding accounts. She is the sole signatory on an individual account titled "Rachel M. Leff" no. [REDACTED] 5265 (the "5265 Account"). *See* Weinstein Dec., ¶ 3, Ex. B. The monthly statements for the NSA Escrow Funding Account show online transfers from that account into Rachel Leff's 5265 Account, to wit: $400,000.00 on May 24, 2007; and $230,000.00 on June 22, 2007. Id., ¶ 4, Ex. C. And monthly statements for the NSA Lydian Funding Account show large-scale, online transfers into that account from Rachel Leff's 5265 Account, to wit: $398,390.00 on June 18 2007; $346,000.00 and another $116,000.00 on June 22, 2007; $18,340.35 and another $5,000.00 on June 25, 2007; and $40,000.00 on June 26, 2007.

### B.   IndyMac has a Likelihood of Success on Claims Against Rachel Leff

It is probable that IndyMac will succeed on the merits of its unjust enrichment claim against Rachel Leff, as well as for fraud (or aiding and abetting) and fraudulent conveyance. It is well settled that a cause of action for unjust enrichment is stated under New York law when a plaintiff conferred a benefit upon the defendant without the defendant compensating the plaintiff. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 600, 741 N.Y.S.2d 100, 102 (2nd Dep't 2002).

NSA retained monies entrusted to it by IndyMac for disbursal at five residential mortgage closings—without disbursing it—and has therefore received a benefit without compensating IndyMac (*i.e.*, performing closing services as instructed). IndyMac's calls to NSA to find the money have not been responded to. IndyMac clearly has a cause of action against NSA under several theories of recovery: breach of contract, conversion, fraud, breach of fiduciary duty, negligence, unjust enrichment, and money had and received.

As set forth *supra*, the Chase bank records show large-scale transfers between Rachel Leff's individual account and NSA escrow funding accounts. *See* Weinstein Dec., ¶¶ 3-5, Exhs. B-D. This warrants pre-judgment attachment against Rachel Leff. *See Mineola Ford Sales Ltd. v. Rapp*, 242 A.D.2d 371, 371–72, 661 N.Y.S.2d 281, 281–82 (2nd Dep't 1997) (employee's diversion of employer's funds for her personal use demonstrated likelihood of ultimate success on the merits and thus warranted prejudgment attachment).

### C. The Amount Demanded From Defendants Exceeds all Known Counterclaims

Nick Nyland has sworn in his affidavit that the amount demanded from the defendants exceeds all known counterclaims. (Nyland Aff. at ¶7).

### D. It is Probable that IndyMac Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order and Preliminary Injunction

A movant will suffer irreparable harm when there is a "substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Injunctive relief is also warranted "where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible." *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996).

As the affidavit of Nicholas Nyland demonstrates, the defendants have already tried to frustrate the enforcement of any judgment that IndyMac might obtain. If the defendants are allowed to continue to hide IndyMac's funds, and their own assets, then upon final resolution of this action, IndyMac will not be returned to the position that it previously occupied.

## II. EXPEDITED DISCOVERY IS NECESSARY AND SHOULD BE GRANTED

Fed. R. Civ. P. 26(d) permits parties to seek discovery prior to the Rule 26(f) conference with leave of the Court. Although courts in this District have traditionally applied a four-part

5.

test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), recent authority suggests "a more flexible 'good cause' test" when a party seeks expedited discovery in aid of preliminary relief. *See, e.g., Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (granting expedited discovery on an *ex parte* basis, and also granting *ex parte* attachment).

IndyMac seeks limited, expedited discovery to locate defendants' assets in New York and to trace the improper transactions. If IndyMac is unable to locate and attach those assets on an expedited basis, defendants may well not satisfy an eventual judgment against them. The expedited access poses no burden to defendants. By contrast, IndyMac will suffer irreparable injury if it cannot collect a judgment against defendants. "[I]rreparable harm is present if it appears that defendants intend[] to frustrate a money judgment by transferring assets in a way that makes the judgment uncollectible." *Computerland Corp. v. Batac, Inc.*, 1988 WL 140816, at *4–5 (S.D.N.Y., Dec. 16, 1988).

IndyMac's fear that Rachel Leff will sell or dissipate assets in an attempt to evade a potential judgment is hardly far-fetched. Defendants' actions show NSA and its principals to be duplicitous and brazen in their theft of fiduciary funds. Finally, as discussed *supra*, IndyMac has a probability of success on its claims. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990 (granting expedited discovery on finding a likelihood of success on two of the plaintiff's four claims).

## Conclusion

For all the reasons above, IndyMac respectfully requests an order of attachment against Rachel Leff's assets, a preliminary injunction against the transfer or assignment of those assets, an order granting expedited discovery, and until such time as this motion can be heard, a temporary restraining order against the transfer or assignment of the her assets.

Dated: New York, New York
       August 16, 2007

                                        FELDMAN WEINSTEIN & SMITH LLP
                                        Attorneys for Plaintiff

                                By:     _____
                                        Eric Weinstein (EW 5423)
                                        David J. Galalis (DG 1654)
                                        420 Lexington Avenue, Ste. 2620
                                        New York, NY 10170
                                        (212) 869-7000

7