UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|                                                  |   |                                      |
|--------------------------------------------------|---|--------------------------------------|
| INDYMAC BANK, F.S.B.,                            | : | Case No.: 07 cv 6865 (LTS)(GWG)      |
|                                                  | : |                                      |
| Plaintiff,                                       |   |                                      |
|                                                  | : |                                      |
| – against –                                      |   | **FIRST AMENDED COMPLAINT**          |
|                                                  | : | **(WITH JURY DEMAND)**               |
| NATIONAL SETTLEMENT AGENCY, INC.;                | : |                                      |
| STEVEN M. LEFF; RACHEL M. LEFF;                  |   |                                      |
| RICHARD A. LEFF; and OPTAMERICA                  | : |                                      |
| MORTGAGE, INC.,                                  |   |                                      |
|                                                  | : |                                      |
| Defendants.                                      |   |                                      |

---

Plaintiff IndyMac Bank, F.S.B., by its attorneys, for its First Amended Complaint, alleges as follows:

**Parties**

1.      Plaintiff IndyMac Bank, F.S.B. ("IndyMac") is a federal savings bank, maintaining a principal place of business at 155 North Lake Avenue, Pasadena, California 91101.

2.      Defendant National Settlement Agency, Inc. ("NSA") is a domestic business corporation, and upon information and belief, maintains or maintained a principal place of business at 404 Park Avenue South, 5th Floor, New York, NY 10016 and also did business out of 575 Madison Avenue, Suite 1006, New York, New York 10022 and 15 Anvil Ct., East Hampton, New York 11937.

3.    Defendant Steven M. Leff is an individual and, upon information and belief, is the president of NSA, and maintains a principal residence at 15 Anvil Ct., East Hampton, New York 11937.

4.    Default judgments were entered against NSA and Steven Leff on December 20, 2007, regarding the allegations of the original complaint in this action. No causes of action are alleged against them in this First Amended Complaint.

5.    Defendant Rachel M. Leff is an individual and, upon information and belief, is the chief executive officer of NSA, is the wife of Steven M. Leff, and maintains a principal residence at 15 Anvil Ct., East Hampton, New York 11937.

6.    Rachel Leff has initiated a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York. In light of the automatic stay, the allegations against her remain unchanged from the original complaint in this action, except for those causes of action that have been withdrawn.

7.    Defendant Richard A. Leff is an individual and, upon information and belief, is an attorney licensed in the State of New York, sole in-house counsel for closing services in NSA, the brother of Steven M. Leff, and resides at 10 Park Road, Short Hills, NJ 07078.

8.    Defendant OptAmerica Mortgage, Inc. ("OptAmerica") is a domestic business corporation, and upon information and belief, maintains or maintained a principal place of business at 100 Broadway, 15th Floor, New York, NY 10005.

### Jurisdiction and Venue

9.    This court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because IndyMac, a citizen of the State of California pursuant to 12 U.S.C. §§ 1462(5) and 1464(x), and the defendants are citizens of different states, and the value of the matter in

controversy exceeds $75,000, exclusive of interest and costs.

10.    Venue in this court is proper under 28 U.S.C. § 1391(a).

## Facts

11.    IndyMac is in the business of funding residential mortgages.

12.    In connection with the funding of certain mortgage loans in June and July of 2007, NSA undertook to act, and acted as, IndyMac's closing agents.

13.    OptAmerica entered into with IndyMac a Customer Agreement and e-MITS User Agreement ("Customer Agreement"), which incorporated the terms of a certain Seller's Guide ("Seller's Guide"), under which OptAmerica originated and delivered certain of the loans to IndyMac.

14.    NSA had the legal obligation, at the time of the closing of each mortgage, to disburse to the borrowers and other payees, according to certain Lender's Closing Instructions, the specific funds that IndyMac had wired in trust to one of NSA's accounts at the Chase Manhattan Bank: (1) "National Settlement Agency, Inc., Attorney Escrow Funding Account" Account No. 904613917, ABA No. 021000021; or (2) "National Settlement Agency, Inc., Attorney Funding Account – Gen" Account No. 987096757765, ABA No. 021000021 (collectively "the accounts").

15.    In June and July of 2007, upon information and belief, NSA and Steven Leff converted or allowed to be converted, approximately $2.3 million of IndyMac's funds that had been wired into the accounts for NSA to disburse or cause to be disbursed to the borrowers and other designated payees at several mortgage closings. Those mortgage closings are described in more detail below.

3

The Holder Mortgage #1 (Loan No. 126888382)

16.    IndyMac agreed to make a loan to Cedric and Joan Holder ("Holder") in the amount of $555,000, to be secured by a mortgage on the real property located at 1072 E. 14th Street, Brooklyn, New York 11230.

17.    OptAmerica originated and delivered the loan to IndyMac under the Customer Agreement.

18.    This mortgage was scheduled to close on or about June 26, 2007.

19.    NSA acted as the closing agent for this mortgage.

20.    IndyMac wired funds to Account No. 987096757765 and provided the NSA with Lender's Closing Instructions which contained directions for NSA's disbursement to Holder and other payees.

21.    OptAmerica received an agreed-upon compensation out of the funds for its origination services and delivery of the loan.

22.    A check drawn, or that should have been drawn, by NSA upon these funds, in the amount of $471,478 to America's Servicing Co., was either dishonored upon presentment because of insufficient funds in Account No. 987096757765, or was never issued or sent to the payee.

23.    Upon information and belief, NSA and Steven Leff secreted this $471,478 their own uses instead of disbursing this money as instructed.

The Holder Mortgage #2 (Loan No. 126852120)

24.    IndyMac agreed to make a loan to Cedric and Joan Holder ("Holder") in the amount of $495,000, to be secured by a mortgage on the real property located at 1074 E. 14th Street, Brooklyn, New York 11230.

25.    OptAmerica originated and delivered the loan to IndyMac under the Customer Agreement.

26.    This mortgage was scheduled to close on or about June 26, 2007.

27.    NSA acted as the closing agent for this mortgage.

28.    IndyMac wired funds to Account No. 987096757765 and provided NSA with Lender's Closing Instructions which contained directions for NSA's disbursement to Holder and other payees.

29.    OptAmerica received an agreed-upon compensation out of the funds for its origination services and delivery of the loan.

30.    A check drawn, or that should have been drawn, by NSA upon these funds, in the amount of $453,421 to AMC Mortgage Services was either never issued or sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 987096757765.

31.    Upon information and belief, NSA and Steven Leff secreted this $453,421 for their own personal uses instead of disbursing this money as instructed.

The Packard Mortgage (Loan No. 126712948)

32.    IndyMac agreed to make a loan to John and Rae Packard ("Packard") in the amount of $1,435,000, to be secured by a mortgage on the real property located at 747 Remsens Lane, Muttontown, New York 11771.

33.    This mortgage was scheduled to close on or about June 25, 2007.

34.    NSA acted as the closing agent for this mortgage.

35.    IndyMac wired funds to Account No. 904613917 and provided NSA with Lender's Closing Instructions which contained directions  for NSA's disbursement to Packard and other payees.

36.    A check drawn, or that should have been drawn, by NSA upon these funds, in the amount of $1,074,111 to Chase Home Finance was either never issued or sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 904613917.

37.    Upon information and belief, NSA and Steven Leff secreted this $1,074,111 for their own uses instead of disbursing this money as instructed.

The Penny Mortgage (Loan No. 126383851)

38.    IndyMac agreed to make a loan to Marcia Penny and Juanita Bartley ("Penny") in the amount of $369,000, to be secured by a mortgage on the real property located at 315 State Avenue, Wyandanch, NewYork 11798.

39.    OptAmerica originated and delivered the loan to IndyMac under the Customer Agreement.

40.    This mortgage was scheduled to close on or about June 8, 2007.

41.    NSA acted as the closing agent for this mortgage.

42.    IndyMac wired funds to Account No. 904613917 and provided NSA with Lender's Closing Instructions which contained directions for its disbursement to Penny and other payees.

43.    OptAmerica received an agreed-upon compensation out of the funds for its origination services and delivery of the loan.

44.    A check drawn, or that should have been drawn, by NSA upon these funds, in the amount of $277,926 to Option One Mortgage was either never issued or sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 987096757765.

45.    Upon information and belief, NSA and Steven Leff secreted this $277,926 for their own uses instead of disbursing this money as instructed.

The Scali Mortgage (Loan No. 126739313)

46.    IndyMac agreed to make a loan to Rocco Scali ("Scali") in the amount of $200,000, to be secured by a mortgage on the real property located at 260 Holdridge Ave, Staten Island, New York 10312.

47.    OptAmerica originated and delivered the loan to IndyMac under the Customer Agreement.

48.    This mortgage was scheduled to close on or about June 15, 2007.

49.    NSA acted as the closing agent for this mortgage.

50.    IndyMac wired funds to Account No. 904613917 and provided NSA with Lender's Closing Instructions which contained directions for its disbursement to Scali and other payees.

51.    OptAmerica received an agreed-upon compensation out of the funds for its origination services and delivery of the loan.

52.    A check drawn, or that should have been drawn, by NSA upon these funds, in the amount of $1,744 to Nationwide Insurance was either never issued or sent to the payee or was dishonored upon presentment because of insufficient funds in Account No. 904613917.

53.    Upon information and belief, NSA and Steven Leff secreted this $1,744 for their own uses instead of disbursing this money as instructed.

**Count I**
**Conversion**
**Against Rachel Leff**

54.    IndyMac incorporates paragraphs 1–53 as if fully set-forth herein.

55.    IndyMac entrusted funds to NSA for the express and sole purpose of disbursing those funds in connection with the above described mortgages.

56.    Rather than the funds being disbursed to the designated payees, NSA, Steven Leff and Rachel Leff each individually and jointly exercised dominion and control over IndyMac's funds by using those funds for their own purposes.

57.    Rachel Leff had no legal, equitable, or other right to use the funds for anything other than disbursement in connection with the mortgages in accordance with the instructions.

58.    As a result of this conversion, IndyMac has been damaged in a sum to be proven upon the trial of this matter, but believed to be $2,278,680.

## Count II
## Unjust Enrichment
## Against Rachel Leff

59.    IndyMac incorporates paragraphs 1-58 as if fully set-forth herein.

60.    Rachel Leff wrongfully benefited from IndyMac's wiring of mortgage disbursement funds to NSA by enjoying portions of those funds for her own personal use.

61.    Rachel Leff was not an intended beneficiary of IndyMac's mortgage disbursement funds.

62.    In equity and good conscience, Rachel Leff must return the funds to IndyMac.

63.    As a result of this unjust enrichment, IndyMac has been damaged in an amount to be proven upon the trial of this matter, but believed to be $2,278,680.

## Count III
## Malpractice
## Against Richard Leff

64.    IndyMac incorporates paragraphs 1-63 as if fully set-forth herein.

65.    Richard Leff owed a duty to IndyMac to ensure that the funds entrusted to NSA for disbursement at the mortgage closings described herein were in fact present in the accounts upon which checks were drawn, and to ensure that all necessary checks were drawn and sent to

the designated payees at or immediately after closing.

66.    Richard Leff breached this duty by not ensuring that sufficient funds were available in the accounts to cover the checks drawn by NSA upon the closings described herein and by failing to deliver checks to the designated payees.

67.    Richard Leff breached his duty to exercise the degree of care, skill, and diligence commonly exercised by an attorney by failing to safeguard IndyMac's entrusted funds from diversion.

68.    As a proximate result of this breach of the duty of care, IndyMac has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $2,278,680.

**Count IV**
**Breach of Contract**
**Against OptAmerica**

69.    IndyMac incorporates paragraphs 1-68 as if fully set-forth herein.

70.    Prior to its delivery of the Holder, Penny, and Scali loans to IndyMac, OptAmerica had personal knowledge that defendant NSA had failed in its obligations as a closing agent to disburse funds to borrowers and other payees in closing certain mortgage loans from other lenders.

71.    Under the Customer Agreement, OptAmerica had an obligation to report to IndyMac any event or issue which could impair OptAmerica's ability to perform in accordance with the Seller's Guide or to comply with its representations and warranties. (Seller's Guide Section 1108).

72.    OptAmerica breached this obligation by failing to advise IndyMac of defendant NSA's neglect or dereliction of its duties as a closing agent in those previous loan transactions.

73. OptAmerica had an obligation to have quality controls in place when reviewing the services of authorized agents, such as closing agents, in order to ensure each agent complies with all instructions. (Seller's Guide Section 1217.02).

74. OptAmerica breached this obligation concerning Closing Agent defendants.

75. Under the Customer Agreement, defendant OptAmerica represented and warranted the following as of the funding date:

    a. The proceeds of the loan have been fully disbursed as instructed (Seller's Guide Section 1206.02(h));

    b. There are no circumstances or conditions with respect to the mortgage instrument that could cause private institutional investors to regard the loan as an unacceptable investment, cause the loan to become delinquent or adversely affect the value or marketability of the loan in the secondary market (Seller's Guide Section 1206.02(b)); and

    c. All documents, materials and other information provided to IndyMac in connection with the delivery of the loan are accurate and complete (Seller's Guide Section 1215).

76. OptAmerica breached these representations and warranties, among others, under the Customer Agreement.

77. Under the Customer Agreement, OptAmerica agreed to indemnify IndyMac and hold IndyMac harmless against all losses, damages, and reasonable attorneys' fees and expenses resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of OptAmerica under the Customer Agreement or the Seller's Guide, or (ii) an act or omission by OptAmerica under the Customer Agreement or the Seller's Guide.

(Customer Agreement Section 6).

78.    OptAmerica failed to so indemnify IndyMac concerning the loans that it delivered to IndyMac.

79.    By reason of each such breach, IndyMac has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $1,204,569.

**Count VI**
**Negligence**
**Against OptAmerica**

80.    IndyMac incorporates paragraphs 1–79 as if fully set-forth herein.

81.    Upon information and belief, OptAmerica was in such a position as to enable it to influence and guide or quality-control defendant NSA's conduct in performing its duties as a closing agent concerning the loans which defendant OptAmerica delivered to IndyMac.

82.    OptAmerica owed IndyMac a duty not to select defendant NSA as a closing agent or to control defendant NSA's conduct concerning the loans so as to prevent NSA's fraud or conversion of the funds.

83.    OptAmerica breached each such duty owed to IndyMac.

84.    OptAmerica owed IndyMac a duty to warn or advise IndyMac of NSA's prior failures or propensity to neglect or derelict its duties as a closing agent to disburse funds to borrowers and other payees.

85.    OptAmerica breached such duty by failing to provide such warning or advice to IndyMac.

86.    As a proximate cause of the breach of duty, IndyMac has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $1,204,569.

**WHEREFORE**, IndyMac respectfully demands judgment as follows:

1.      On Count I (Conversion), damages against Rachel Leff in an amount to be determined upon the trial of this matter, but believed to be no less than $2,278,680.

2.      On Count II (Unjust Enrichment), damages against Rachel Leff in an amount to be determined upon the trial of this matter, but believed to be no less than $2,278,680.

3.      On Count III (Malpractice), damages against Richard Leff in an amount to be determined upon the trial of this matter, but believed to be no less than $2,278,680.

4.      An order preliminarily enjoining and restraining the transfer of any assets held by Rachel Leff pending final judgment in this action.

5.      On Count IV (Breach of Contract), damages against OptAmerica in an amount to be determined upon the trial of this matter, but believed to be no less than $1,204,569, plus reasonable attorneys' fees and costs incurred.

6.      On Count V (Negligence), damages against OptAmerica in an amount to be determined upon the trial of this matter, but believed to be no less than $1,204,569, plus reasonable attorneys' fees and costs incurred.

7.      Any other relief that this Court deems just and proper, together with the costs, disbursements, and attorney's fees incurred in this action.

**Jury Demand**

Plaintiff demands a trial by jury.

Dated:  New York, New York
        January 4, 2008

                                        FELDMAN WEINSTEIN & SMITH LLP
                                        Attorneys to Plaintiff IndyMac Bank

                               By:      _____
                                        Eric Weinstein (EW 5423)
                                        David J. Galalis (DG 1654)
                                        Yong Hak Kim (of counsel)
                                        420 Lexington Avenue, Ste. 2620
                                        New York, NY 10170
                                        (212) 869-7000

13