UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

INDYMAC BANK, F.S.B.,

                   Plaintiff,

  – against –

NATIONAL SETTLEMENT AGENCY, INC.;
STEVEN M. LEFF; RACHEL M. LEFF;
RICHARD A. LEFF; and OPTAMERICA
MORTGAGE, INC.,

                Defendants.

———————————————————————

Case No.: 07 cv 6865 (LTS)(GWG)

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
INDYMAC'S ORDER TO SHOW
CAUSE TO COMPEL SITT ASSET
MANAGEMENT TO DELIVER TO
THE U.S. MARSHAL THE
ATTACHED FUNDS OF STEVEN
M. LEFF AND NATIONAL
SETTLEMENT AGENCY**

      IndyMac Bank, F.S.B. ("IndyMac") respectfully submits this reply memorandum of law

in further support of its order to show cause to compel Sitt Asset Management to deliver to the

U.S. Marshal the attached funds of Steven M. Leff and National Settlement Agency.

<b>Legal Standard</b>

      The court's analysis should begin with N.Y. Gen. Oblig. Law § 7-103(1) (2007), which

makes a landlord a trustee of any money which a tenant deposits or advances as security for the

tenant's performance of the lease or to be applied to payments when due.  Such money remains

the property of the tenant, with the landlord under paramount obligation to keep that money in

trust until it is repaid to the lessee or is applied in accordance with the terms of the lease.

      N.Y. Gen. Oblig. Law § 7-103(1) states:

> Whenever money shall be deposited or advanced on a contract or license
> agreement for the use or rental of real property as security for performance of the
> contract or agreement or to be applied to payments upon such contract or
> agreement when due, such money, with interest accruing thereon, if any, until
> repaid or so applied, shall continue to be the money of the person making such
> deposit or advance and shall be held in trust by the person with whom such
> deposit or advance shall be made and shall not be mingled with the personal

moneys or become an asset of the person receiving the same, but may be disposed of as provided in section 7-105 of this chapter.

## Facts

On April 26, 2007, NSA advanced $25,100.00 and $3,253.34 for the first-due monthly rents for Suites 1203 and 1201, respectively. On the same day, NSA also placed $100,400.00 and $13,013.34 on deposit as security for Suites 1203 and 1201, respectively. Thus, total deposits of $125,500.00 and $16,266.68 were made, respectively, for Suites 1203 and 1201, totaling in all $141,766.68. (Affidavit of Mary Jean Rose, sworn to January 18, 2008, ¶¶6–8).[1]

## Argument

Sitt Asset Management ("Sitt") has failed to demonstrate that it held National Settlement Agency's ("NSA's") security deposit and rental advances in accordance with the law and the lease. The entire sum deposited and advanced to Sitt therefore still belongs to NSA, and in turn, belongs to IndyMac as an attachment and judgment-creditor.[2]

---

[1]    It appears from the Affidavit of Mary Jean Rose that Sitt Asset Management is the managing agent for 180 Madison Owners LLC, the landlord for the space at issue. (Rose Aff. ¶1). Sitt Asset Management, however, has not argued that it is an improper party to this proceeding. Thus, it should be assumed that Sitt Asset Management represents the interests of 180 Madison Owners LLC and is capable of delivering to the U.S. Marshal the funds that IndyMac is seeking. Sitt Asset Management and 180 Madison Owners LLC will be individually and collectively referred to, as the context requires, as "Sitt."

[2]    On October 11, 2007, the Order of Attachment was levied upon Sitt. Thereafter, IndyMac obtained a default judgment and writ of execution against NSA. (Docket entries 55 on Dec. 20, 2007 and the unnumbered docket entry on Jan. 7, 2008). IndyMac is therefore now also a judgment-creditor to NSA, and upon Sitt's tender of the attached funds to the U.S. Marshal, will levy its writ of execution upon those funds.

I.    **SITT HAS NOT SUBMITTED PROOF THAT IT HELD NSA'S SECURITY DEPOSIT IN A SEPARATE BANK ACCOUNT AND THEREFORE THE ENTIRE AMOUNT DEPOSITED AND ADVANCED ON SUITES 1203 AND 1201 HAS BEEN FORFEITED**

"Commingling entitles a tenant to an immediate return of the deposit because the landlord who has converted the funds forfeits his right to security." *Glass v. Janbach Properties, Inc.*, 73 A.D.2d 106, 110, 425 N.Y.S.2d 343, 345 (2d Dept. 1980); *see also* N.Y. Gen. Oblig. Law § 7-103(1). Here, Sitt offers no proof that the NSA security deposit was held in a separate bank account as required by law. Accordingly, the NSA security deposit should be forfeited to the U.S. Marshal pursuant to IndyMac's Order of Attachment.

II.    **SITT HAS NOT SUBMITTED PROOF THAT THE SUITE 1203 LEASE TERM COMMENCED AND THEREFORE THE ENTIRE AMOUNT DEPOSITED AND ADVANCED ON SUITE 1203 HAS BEEN FORFEITED**

Article 2 of the lease agreement provides that the term of the lease upon Suite 1203 "shall commence on the date Landlord delivers the Suite 1203 Premises to Tenant with Landlord's Work Substantially completed (the 'Commencement Date') . . . ." Article 2 goes on to state that "Landlord expects the Commencement Date to be on or about July 1, 2007. However, in the event the Commencement Date shall not occur by October 1, 2007, other than due to no fault on Landlord's part, then the sixty (60) day Fixed Rent abatement set forth in Article 3.02 herein shall be extended on a day-for-day basis by one day for each day after October 1, 2007, that the Commencement Date is delayed. Landlord agrees to provide fifteen (15) day prior written notice to Tenant of the Commencement Date." (Rose Aff. Ex. A, p. 2).

Sitt has tendered no proof that Suite 1203 was ever delivered to NSA or that the 15 days written notice was ever provided to NSA. It can therefore only be assumed that Suite 1203 was never delivered to NSA, and that therefore, the term on Suite 1203—and the associated rental obligation—never began. Thus, the money advanced and put on deposit for Suite 1203

($125,500.00) remains the property of NSA, and should be forfeited to the U.S. Marshal

pursuant to IndyMac's Order of Attachment.

**III.   EVEN IF THE SUITE 1203 LEASE TERM COMMENCED ON JULY 1, 2007, SITT'S NON-PAYMENT PROCEEDING WAS IN VIOLATION OF THE LEASE AND NSA THEREFORE RETAINS AN EQUITABLE RIGHT TO ITS ADVANCED AND DEPOSITED MONEY**

Article 3.02 of the lease agreement provides that in connection with Suite 1203, "so long

as Tenant is *not in default* under this Lease, Tenant shall receive an abatement of Fixed Rent for

the Suite 1203 Premises . . . beginning on the Commencement Date and ending . . . [60 days]

after the Commencement Date." (Rose Aff. Ex. A, p. 3) (emphasis added).  Article 3.01 of the

lease states that  rent "shall be payable in equal monthly installments in advance on the first (1st)

day of each calendar month during the Term." (Rose Aff. Ex. A, p. 3).

Even assuming then that the term of Suite 1203 commenced on July 1, 2007, NSA did

not owe any rental payments to Sitt until October 1, 2007: the 60-day rent abatement, plus the

$25,100 advanced as first month's rent, accounted for the July, August, and September rental

payments.  Thus, Landlord's September 24, 2007 "Demand for Rent" and the non-payment

proceeding commenced on October 11, 2007 (Rose Aff. Ex. D) was improper.  According to

Article 5 of the lease, Sitt should have waited until the October 1, 2007 rental payment wasn't

made, at which time it could have made a 5 day's cure-notice for rent, at the expiration of which

a failure to pay would then constitute default under the lease.  (Rose Aff. Ex. A, p. 9). [3]

Accordingly, even though Sitt now has a non-payment default judgment for $81,097.50,

as a trustee of NSA's deposits and advances, Sitt cannot in good conscience apply those funds

when Sitt knew that the default judgment was obtained improperly and without basis under the

lease agreement.

--------

[3]     It is worth noting that Sitt commenced its nonpayment proceeding the same day the Order of Attachment was levied upon it—October 11, 2007.

IV.    **THE SUITE 1201 TERM NEVER COMMENCED AND THEREFORE ALL MONEY ADVANCED AND DEPOSITED THEREUNDER REMAINS THE PROPERTY OF NSA**

The $16,266.68 advanced and deposited for Suite 1201 ($3,253.34 advanced rent and $13,013.34 security deposit) remains the property of NSA. Article 1 of the lease states that the Suite 1201 term commences upon delivery of possession of Suite 1201, which is contingent upon surrender of that premises by an existing tenant ("Suite 1201 Commencement Date"). (Rose Aff. Ex. A, p. 1). Article 31 provides that "*[u]pon the Suite 1201 Commencement Date*, Tenant shall deposit with Landlord the additional sum of $13,013.34 as additional security for the performance of Tenant's obligations accruing under the Lease . . . ." (Rose Aff. Ex. A, p. 27). Thus, this provision clearly indicates the parties' intent that the application of this deposit may only be made against Tenant's obligations that accrue *after* the Suite 1201 Commencement Date, since the additional deposit was required after the Suite 1201 Commencement Date.

Sitt appears to concede that it never delivered possession of Suite 1201 to NSA. Because this contingency did not happen, the $16,266.68 advanced and deposited for Suite 1201 remains the property of NSA. Indeed, Article 1 of the Lease provides that if the Landlord is unable to deliver possession of Suite 1201 by November 1, 2007, either party may, by a ten-day written notice, nullify and void "the provisions of this Lease relating to [Suite 1201]." (Rose Aff. Ex. A, p. 1–2). Sitt does not state whether it ever gave such notice to NSA, or if NSA ever gave such notice to it. However, on October 11, 2007, Sitt filed a proceeding seeking to evict NSA. (Rose. Aff. ¶ 12). Because this proceeding was commenced before Suite 1201 was delivered, and before November 1, 2007 (the date upon which NSA could act to nullify the provisions of the lease relating to Suite 1201) the commencement of the proceeding for eviction constitutes landlord's nullification of the Suite 1201 provisions. Accordingly, all funds advanced and

deposited on Suite 1201 should be forfeited to the U.S. Marshal in favor of IndyMac's Order of Attachment.

Sitt will likely argue on the return date, however, that the default provision of Article 5.02 nevertheless entitles it to retain the amounts advanced and deposited for Suite 1201, notwithstanding the fact that Suite 1201 was never delivered. Article 5.02 states that "[i]n the event that Tenant is in arrears for Fixed Annual Rent . . . Tenant waives its right, if any, to designate the items against which *payments* made by Tenant are to be credited and Landlord may apply any *payments* made by Tenant to any items which Landlord in its sole discretion may elect . . . ." (Rose Aff. Ex. A, p. 10) (emphasis added). The $13,013.34 *deposited* on Suite 1201 and the $3,253.34 *advanced* for the first month's rent on Suite 1201 are not *payments* within the ambit of Article 5.02 for the simple reason that the advance and deposit remained NSA's property. In fact, the ledger for Suite 1201 reflects this fact in that it does not list the $3,253.34 advanced rent as an accrued charge. To the extent that Article 5.02 is meant to be interpreted any other way, it is in conflict with NY Gen. Oblig. Law §7-103(1), and is therefore void under §7-103(3).

### Conclusion

As a trustee of NSA's advanced rental payments and security deposit, Sitt was obligated to strictly abide by the lease terms before retaining any of that money as its own. Sitt has failed to so strictly abide. All money advanced and deposited by NSA therefore remains the property of NSA and should be forfeited to the U.S. Marshal pursuant to IndyMac's Order of Attachment.

Dated: New York, New York
       January 25, 2008

                                        FELDMAN WEINSTEIN & SMITH LLP
                                        Attorneys to IndyMac Bank, F.S.B.

                                By:    _____
                                        Eric Weinstein (EW 5423)
                                        David J. Galalis (DG 1654)
                                        Yong Hak Kim (of counsel)
                                        420 Lexington Avenue, Ste. 2620
                                        New York, NY 10170
                                        (212) 869-7000