UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
INDYMAC BANK, F.S.B.,                        Case No.: 07 CV 6865 (LTS)

                       Plaintiff,

-against-

NATIONAL SETTLEMENT AGENCY, INC.;
STEVEN M. LEFF; RACHEL M. LEFF;
RICHARD A. LEFF; JOHN DOES 1-100,

                       Defendants.
-------------------------------------------------------------x


MEMORANDUM OF LAW OF NON-PARTIES/
GARNISHEES 180 MADISON OWNERS LLC AND
SITT ASSET MANAGEMENT LLC IN OPPOSITION
TO MOTION OF INDYMAC BANK F.S.B. FOR
<u>TURNOVER ORDER OR JUDGMENT</u>


                       CYRULI SHANKS HART & ZIZMOR
                       LLP

                       By: _____
                          Marc J. Schneider (MS 3438)

                       Attorneys for Sitt Asset
                       Management, LLC and 180 Madison
                       Owners, LLC

                       420 Lexington Avenue, Suite 2320
                       New York, New York 10170
                       (212) 661-6800

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | 7 |
| Landlord is Entitled to Security Deposit and First Month's Rent for Suite 1203 due to NSA's Default in the Payment of Rent and additional Rent under the Lease. | 7 |
| Landlord Entitled to Security Deposit and First Month's Rent for Suite 1201 and the Hallway Space due to NSA's Default in the Payment of Rent and additional Rent under the Lease for Suite 1203 | 11 |
| Plaintiff is not Entitled to a Return of the Security Deposit as a Result of any Commingling | 12 |
| CONCLUSION | 15 |

## PRELIMINARY STATEMENT

180 Madison Owners, LLC ("Landlord") and Sitt Asset Management LLC respectfully submit this memorandum of law in opposition to the motion of IndyMac Bank, F.S.B. ("Plaintiff") which seeks, *inter alia*, an order directing Landlord to turnover certain monies heretofore paid by one of the judgment debtors in this action, National Settlement Agency, Inc. ("NSA"), to Landlord in connection with NSA's leasing of certain premises from Landlord.

In particular, Plaintiff seeks an order directing Landlord and/or its managing agent, Sitt Asset Management LLC, to turnover to Plaintiff two security deposits and two first month's rent payment made by NSA to Landlord.

However, for the reasons set forth below, Plaintiff is not entitled to the relief that it seeks.

## STATEMENT OF FACTS

The facts set forth herein below are based upon the accompanying Stipulation of documents and facts (the "Stipulation") and the affidavits of Salim Kukaj and Joseph Antonacci.[1]

In April 2007, Landlord leased to NSA, and NSA hired from Landlord, Suite 1200, 1201, 1203 and a hallway space at 180 Madison Avenue, New York, New York 10016 (the "Premises"). However, at the time of the execution of the lease for the

---

[1] Mr. Antonacci's affidavit was submitted to Plaintiff's counsel prior to the making of the instant motion as part of a possible settlement of this matter. The three exhibits to Mr. Antonacci's affidavit are not submitted as part of his affidavit herewith. Instead, Exhibit A to Mr. Antonacci's affidavit is annexed as Exhibit H to the Stipulation. Exhibit B to Mr. Antonacci's affidavit is annexed as Exhibit I to the Stipulation. Exhibit C to Mr. Antonacci's affidavit is annexed as Exhibit J to the Stipulation.

1

Premises (the "Lease"), Landlord could only deliver over possession of Suite 1203 to NSA, with the balance of the Premises to be made available to NSA as they became available as set forth in article 1.01 of the Lease. The term of the Lease for the Premises runs through June 30, 2015. (The Lease is annexed as Exhibit C to the Stipulation.)

First, in this Statement of Facts, Landlord will address the issue of NSA's payment of the rent security deposits and first month's rents and NSA's subsequent default in the payment of rent and additional rent under the Lease. In the second part of this Memorandum of Law, Landlord will discuss facts pertinent to the "Commencement Date" as that term is defined in the Lease.

i) The Security Deposits and First Month's Rent Payments

On April 26, 2007, NSA tendered two bank checks to Landlord. One was check number 781319526, in the sum of $113,413.34, while the other was check number 781319527, in the sum of $28,353.34. (A copy of these two checks is annexed as Exhibit D to the Stipulation.)

Check number 781319527, in the sum of $28,353.34, accounted for the first month's rent for Suite 1203 as set forth in Article 3.01 in the Lease in the sum of $25,100.00. The balance of this check went to the first month's rent for suite 1201 and the hallway space in the sum of $3,253.34 as set forth in Exhibit B of the Lease.

Check number 781319526, in the sum of $113,413.34, went for the security deposit for: i) Suite 1203 in the sum of $100,400.00 and ii) suite 1201 and hallway space in the sum of $13,113.34, all in accordance with Article 31 of the Lease.

For the reasons discussed in Part I of the Argument portion of this Memorandum of Law below, the term of the Lease for Suite 1203 commenced on July 1, 2007 (the "Commencement Date"). Pursuant to Article 3.01 of the Lease, NSA agreed to pay fixed rent for Suite 1203 at the rate of $25,100.00 per month plus certain additional rent charges. The Lease did provide that NSA would not have to pay any part of the $25,100.00 in fixed rent for the first 60 days after the Commencement Date of the Lease provided that NSA did not default under the Lease. However, the Lease did not provide NSA with an abatement of the "additional rent" charges, which NSA had to pay effective as of the Commencement Date of the Lease.

Annexed as Exhibit E to the Stipulation is a copy NSA's tenant ledger for Suite 1203. First, it shows Landlord's receipt of the security deposit and the first month fixed rent for Suite 1203. However, Exhibit E also shows that other than the payment of the first month of fixed rent, NSA also never paid any rent to Landlord for Suite 1203. Thus, NSA never paid the additional rent charges for July 2007 or any subsequent months as it was obligated to do under the terms of the Lease.

Equally significantly, Exhibit E to the Stipulation also shows that through January 2008, NSA owed to Landlord the sum of $115,015.20 in rent and additional rent charges. Thus, with respect to Suite 1203, NSA's Arrears through January 2008 already exceeded the $100,400.00 that NSA paid as security for suite 1203. (NSA also did not pay any rent for February 2008 and March 2008. See paragraph 12 to the Stipulation.)

Based upon NSA's default, Landlord commenced a summary non-payment eviction proceeding to recover suite 1203. (A copy of the non-payment petition in the summary proceeding is annexed as Exhibit K to the Stipulation.) NSA defaulted in the

3

non-payment proceeding and was ultimately evicted from Suite 1203 on January 8, 2008. (A copy of the final judgment of possession – which also evidences the issuance of a warrant of eviction on November 23, 2007 – is annexed as Exhibit F to the Stipulation.) Also, under New York law, the issuance of the warrant of eviction terminated the Lease and the landlord tenant relationship between Landlord and NSA. (See N.Y. RPAPL §749.)

ii) <u>The Commencement Date of the Lease</u>

For the reasons set forth below, the "Commencement Date" of the Lease was July 1, 2007. The Commencement Date is significant because, as noted above, it triggers the running of NSA's obligation to begin paying both fixed rent and additional rent. Some background is required on this point, most of which is set forth in the accompanying affidavit of Joseph Antonacci, the Director of Operations for Sitt Asset Management LLC, and summarized hereinbelow.

Article 22.02 of the Lease provides that the "Tenant shall prepare by a registered architect and/or license professional engineer, at its sole cost and expense ... final and complete dimensional architectural, mechanical, electrical and structural drawings for Tenant's Initial Alteration Work."

In addition, pursuant to the Lease, Landlord agreed to provide "the new building installation based upon Tenant's architectural plans" and that "Landlord's cost for said new building installation shall not exceed $40.00 psf." (The said work is hereinafter referred to as the "Initial Work.")

NSA hired Barry Holden Architects to prepare drawings in order for the construction of the Initial Work to take place.

Subsequent to NSA's architect's completion of the drawings and Landlord's approval thereof, Landlord bid out the Initial Work to general contractors.

When the bids came back, Steven Leff, a principal of NSA, advised Landlord that he did not like any of the general contractors that had agreed to perform the Initial Work. Instead, he advised Landlord that that NSA would hire its own general contractor. As a result of the foregoing, the Landlord agreed: i) to let NSA hire its own general contractor for the Initial Work and ii) to pay up to the amount of the $40.00 per square foot for the cost of the Initial Work as set forth in the Lease. NSA hired J&M Industries Inc. ("J&M") as its general contractor for the Initial Work.

On or about May 10, 2007, J&M entered into NSA's premises and began its work. (The accompanying affidavit of Salim Kukaj states that on or about May 9, 2007 he delivered the keys to Suite 1203 to Mr. Manny Ruta of J&M.) Thereafter, J&M commenced its performance of the Initial Work as evidenced by the photos annexed as Exhibit H to the Stipulation. That NSA's contractor commenced work at the NSA's premises is further evidenced by the invoice from Sitt Asset Management LLC to NSA annexed as Exhibit I to the Stipulation evidencing the freight charges incurred by NSA as a result of deliveries of materials in connection with the Initial Work.

On or about July 9, 2007, J&M walked off the job. Jim Fauci of J&M advised Joseph Antonacci, that it walked off the job because NSA was not paying its architect and, therefore, the architect would not review or approve the progress payments unless he was paid.

According to the Lease, the Commencement Date was expected to be July 1, 2007 (Lease Art. 2.01). Because NSA failed to perform the Initial Work, as discussed in Part I of the Argument below, the Commencement Date must be deemed to be July 1, 2007.

## **ARGUMENT**

I. Landlord is Entitled to Security Deposit and First Month's Rent for Suite 1203 due to NSA's Default in the Payment of Rent and additional Rent under the Lease.

It is undisputed that other than the first month's fixed rent in the sum of $25,100.00 NSA paid for upon the execution of the Lease, NSA did not pay any rent or additional rent for Suite 1203. The arrears for Suite 1203 totaled $115,015.20 through January 2008. When February and March 2008 regularly recurring rent and additional rent charges of $54,065.00 are added, the arrears through March 2008 total $169,080.20. Thus, the security deposit ($100,400.00) made with respect to suite 1203 is not subject to attachment because, under the terms of the Lease, NSA owes the Landlord an amount in excess of said security deposit amount.

Plaintiff argues that Landlord is not entitled to keep either the first month's rent payment for Suite 1203 (in the sum of $25,100.00) or the rent security deposit (in the sum of $100,400.00). Specifically, Plaintiff argues that:

> Landlord neither delivered possession, nor provided written notice of commencement [of the Lease] to NSA. Therefore, the term on Suite 1203 – and the associated rental obligations – never began. Accordingly, the money advanced and put on deposit for Suite 1203 ($125,500.00) was and remains the property of NSA.
> (Plaintiff, Memorandum of Law, p. 6)

Plaintiff is wrong on the facts and the associated legal principles both with respect to the claimed non-delivery of the Premises to NSA and Landlord's claimed failure to provide NSA with written notice of the commencement of the Lease.

On the facts, the affidavit of Salim Kukaj unequivocally evidences that the keys to Suite 1203 were delivered over to NSA's general contractor, J&M, on or about May 9, 2007. Further, Exhibit H (which are photographs of a portion of the Initial Work performed by J&M) and Exhibit I (which is an invoice for charges to NSA based upon J&M's use of the freight elevator in connection with the Initial Work) all demonstrate that NSA took possession of the Premises.

The legal principles support Landlord's position on this issue. As set forth in Darob Holding Co. v. House of Pile Fabrics Inc., 62 Misc2d 899, 310 N.Y.S.2d 418 (Civ. Ct. New York Co. 1970):

> The law is clear that as soon as a lease is executed and delivered, the tenant becomes the owner of the premises for the term and acquires the right to possession as of the date of the commencement of the term. *Id* at 900, 420.

Thus, NSA had possession of Suite 1203 upon the signing and delivery of the Lease. Moreover, the Landlord delivered the keys to J&M and there is no evidence that Landlord barred NSA from possession of Suite 1203.

Additionally, paragraph 2 of the non-payment petition alleges that NSA "is the tenant of [Suite 1203] who entered into possession of thereof under a written lease agreement...." (See Exhibit K to the Stipulation.)

Under New York law, a default judgment constitutes a judgment on the merits. Feeney v. Licari, 131 A.D.2d 539, 516 N.Y.S.2d 265 (2nd Dept. 1987). Therefore, under the rule of *res judicata*, Plaintiff cannot, in this proceeding, challenge the default judgment or the truth of the allegations set forth in the non-payment petition, including but not limited to the allegation that NSA entered into possession of Suite 1203.

8

Plaintiff's second prong of its argument – that the July 1, 2007 Commencement Date did not occur – fares no better. There are two significant pieces of evidence demonstrating this conclusion.

First, Article 22.03 of the Lease states that "any delay in completion of [the Initial Work] caused due to NSA … shall not postpone the Commencement Dates as set forth in this Lease" including the July 1, 2007 commencement date set for Suite 1203.

The second piece of evidence is a release that the NSA signed after Landlord and NSA agreed that NSA, through its own contractor(s), would perform the Initial Work. That release, which is annexed hereto as Exhibit J to the Stipulation and is dated May 11, 2007, states:

> National Settlement Agency, Inc. further acknowledges that [Landlord] will not be responsible for any delay in the delivery date as long as the delay was not caused by the actions of [Landlord]."

As set forth above, Landlord did not cause the delay in the Initial Work; NSA did because J&M, NSA's contractor, walked off the job. Therefore, the Commencement Date should not be delayed past the July 1, 2007 date contemplated by the Lease.

Additionally, Plaintiff points out that the Lease states that the Landlord "agrees to provide fifteen (15) days prior written notice to Tenant of the Commencement Date." (Lease, ¶2.) According to Plaintiff, Landlord's failure to have sent said 15 day notice meant that the Commencement Date never occurred which, in turn, meant that NSA's obligation to pay rent and additional rent never commenced to run. However, under the facts of this case, Landlord's failure to have sent said 15 day notice did not affect or delay the July 1, 2007 Commencement Date.

9

As originally provided for under the Lease, Landlord was to perform the Initial Work. Thus, the purpose of the 15 day notice was for Landlord to let NSA know that Landlord had completed the Initial Work. However, since NSA did the Initial Work, NSA did not require any notification from the Landlord as to when the Initial Work was completed and therefore when NSA could move into the Premises. Thus, even though Landlord did not send the 15 day notice it did not affect the Commencement Date of the Lease.

Finally, Plaintiff maintains that this court should ignore the judgment that Landlord obtained in Civil Court against NSA (Exhibit F to the Stipulation) because, based upon the above noted 60 day rent abatement provided for under the Lease. no rental payments were allegedly due at the time that Landlord commenced its non-payment proceeding in October 2007.

First, on the facts, Plaintiff is again wrong. Article 3.02 of the Lease states that the 60 day rent abatement period applies only to NSA's obligation to pay the "Fixed Rent." The Fixed Rent, as demonstrated in Article 3.01 of the Lease and Exhibit B to the Lease, does not include "Additional Rent." Therefore, NSA was obligated to pay additional rent effective as of July 1, 2007. As demonstrated by Exhibit E to the Stipulation, NSA failed to pay the additional rent from and after July 1, 2007. Therefore, Landlord had a proper basis for commencing its non-payment proceeding against NSA.

And, of course, Article 3.02 of the Lease states that if NSA defaulted under the terms of the Lease – which NSA undeniably did – then Landlord is entitled to repayment from NSA the two months of Fixed Rent that Landlord initially abated.

10

Finally, on the law, for the reasons set forth in Feeney v. Licari, *(Supra)*, Plaintiff cannot challenge, in this proceeding, the judgment entered in the Civil Court non-payment proceeding against NSA or the facts underlying or supporting that judgment.

II. Landlord Entitled to Security Deposit and First Month's Rent for Suite 1201 and the Hallway Space due to NSA's Default in the Payment of Rent and additional Rent under the Lease for Suite 1203

In addition, even though possession of Suite 1201 and the hallway space was not turned over to NSA, this court should not order the return of the security deposit submitted by NSA with respect thereto. This is because Article 31.01 of the Lease provides that, "NSA shall deposit with Landlord the additional sum of $13,103.34 as additional security for the performance of NSA's obligations accruing under this Lease." (Emphasis added.) Significantly, the foregoing Lease provision does not limit the application of the $13,103.34 to defaults that solely pertain to the non-payment of rent and additional rent for Suite 1201 and the hallway space. Instead, Article 31.01 of the Lease allows the Landlord to use said $13,103.34 for any defaults "accruing under this Lease" – which would include defaults in payment of rent under Suite 1203. Therefore, this court should not direct Landlord to turnover to Plaintiff NSA's payment of the security deposit in the sum of $13,103.34.

Landlord is also entitled to keep the one month of rent that NSA paid for Suite 1201 and the hallway space in the sum of $3,253.34, which was part of Check 781319527 in the sum of $28,353.34.

11

Significantly, Article 5.02 of the Lease provides, in pertinent part, that:

> In the event that [NSA] is in arrears for Fixed Annual Rent or any item of Additional Rent, [NSA] waives its right, if any, to designate the items against which payments made by [NSA] are to be credited and Landlord may apply any payments made by [NSA] to any items which Landlord is its sole discretion may elect irrespective of any designation by [NSA] as to the items against which any such payment should be credited.

As such, due to NSA's default in the payment of rent and additional rent for Suite 1203, Landlord has the right to apply the rent received for Suite 1201 and hallway space toward the arrears for Suite 1203.

III.   Plaintiff is not Entitled to a Return of the
       Security Deposit as a Result of any Commingling

Plaintiff asserts that even if Landlord is otherwise entitled to payment of the rent and additional rent due for Suite 1203, it cannot apply the security deposit to said arrears because it was not held in a segregated account in accordance with N.Y. Gen. Oblig. Law §7-103(1). Under the facts of this case, Plaintiff's argument should be rejected.

Landlord starts from a basic proposition of New York law as it pertains to a landlord's holding of a rent security deposit. New York Jurisprudence2d states that a security deposit:

> ... is not a trust in the conventional sense, as is made clear by the fact that the landlord may under the statute legitimately apply the deposit to damages he or she sustains from the tenant's breach. After the tenant has defaulted, no purpose is served by holding the funds in trust since the need to insure the availability of the deposit to the tenant no longer exists. The recognition of the relationship as one in trust imputes no greater rights to the deposit than possessed by the tenant who is not entitled to its return until he or she satisfies his or her obligations to the landlord.
> 74A N.Y. Jur. 2d Landlord and Tenant §647

Again, Plaintiff does – indeed cannot – dispute that NSA defaulted under the terms of the Lease and that the amount of its default exceeds the amount of rent security deposit held by Landlord. Therefore, Landlord is entitled to keep the security deposit to satisfy NSA undisputed default.

Nonetheless, Plaintiff maintains that due to the commingling of the security deposit Landlord is not entitled to any portion of it and that Plaintiff – standing in the shoes of NSA – is entitled to its return in accordance with the case law cited in Point I of its Memorandum of Law.

However, the facts at bar and the case of Pollack v. Springer 195 Misc. 523, 91 N.Y.S2d 847 (Civ. Ct., Bronx Co. 1949) *modified* 196 Misc. 1015, 95 N.Y.S.2d 527 (A.T. 1st Dept. 1949) readily distinguish the cases cited by Plaintiff.

The key distinguishing factor in the case at bar is that Landlord had already secured a judgment against NSA prior to Plaintiff's filing the instant motion in this matter. In none of the cases that Plaintiff cites had the landlord obtained a judgment for the non-payment of rent prior to the tenant's demand for a return of the security deposit based upon a claim of commingling.

The foregoing is significant because of the Appellate Term's ruling in Pollack v. Springer *(Supra)*. In that case, after the landlord had obtained a judgment for rent arrears the tenant sought to recover his security deposit based upon a violation of the predecessor statute to N.Y. Gen. Obleg. Law §7-103(1). The Civil Court granted the tenant's request for relief finding that the judgment that the landlord had previously obtained for the rent arrears could not be offset against the tenant's claim. Significantly, however, the

13

Appellate Term, First Department, which has jurisdiction over Bronx and New York counties, modified the Civil Court's ruling to hold that the prior judgment obtained against the tenant could be offset against the tenant's claim for a return of the security deposit.

The same rule should be applied to the case at bar, particular since there is no dispute that NSA has failed to pay the arrears through March 2008.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied.

Dated: New York, New York
April 1, 2008

                            CYRULI SHANKS HART & ZIZMOR LLP

By: _____
Marc J. Schneider (MS 3438)

Attorneys for Sitt Asset Management, LLC and 180 Madison Owners, LLC

420 Lexington Avenue, Suite 2320
New York, New York 10170
(212) 661-6800

15