UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INDYMAC BANK, F.S.B.,                                       :

                                                     07 Civ. 6865 (LTS) (GWG)

        Plaintiff,                                        :

  -v.-                                                              :       REPORT AND
                                                     RECOMMENDATION
NATIONAL SETTLEMENT AGENCY, INC.,        :
et al.,
                                                     :

        Defendants.
-----------------------------------------------------------------X

In re: Special Proceeding Brought by IndyMac Bank,
F.S.B. against 180 Madison Owners LLC, and
Sitt Asset Management, LLC

-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       A default judgment was entered against defendants National Settlement Agency, Inc., ("NSA") and Steven M. Leff, in the amount of $2,349,150, in this case on December 20, 2007. In an attempt to collect on this default judgment, plaintiff IndyMac Bank ("IndyMac") now seeks an order directing nonparties 180 Madison Owners, LLC, and Sitt Asset Management, LLC (collectively, the "Landlord") to turn over funds deposited by NSA with the Landlord pursuant to a commercial lease. For the following reasons, IndyMac's motion should be granted.

I.     BACKGROUND

    A.    Facts

       The relevant facts are undisputed. In April 2007, NSA and the Landlord entered into a lease agreement for suites 1200, 1201, 1203, and hallway space in the commercial property located at 180 Madison Avenue in New York City. See Agreement of Lease, dated Apr. 2007 (annexed as Ex. C to Stipulation, filed Apr. 1, 2008 (Docket # 87) ("Stip.")) ("Lease"), at 1.

That same month, NSA gave the Landlord two checks – one for $28,353.34 ("Check One"), and another for $113,413.34 ("Check Two"). See Ex. D to Stip. Check One was for the first month's rents for suite 1203 ($25,100.00) and for suite 1201 and the hallway space ($3,253.34). See Memorandum of Law, filed Mar. 11, 2008 (Docket # 83) ("IndyMac Mem."), at 1; Memorandum of Law of Non-Parties/Garnishees 180 Madison Owners LLC and Sitt Asset Management LLC in Opposition to Motion of IndyMac Bank F.S.B. for Turnover Order or Judgment, filed Apr. 1, 2008 (Docket # 86) ("Landlord Mem."), at 2. Check Two was for the security deposits for these areas: $100,400.00 for suite 1203 and $13,013.34 for Suite 1201 and the hallway space. See IndyMac Mem. at 1; Landlord Mem. at 2. Thus the total amount of money advanced to the Landlord was $141,766.68. The Landlord did not deposit the checks into a segregated account, but deposited them into a general operating account. See Landlord Mem. at 12-13; IndyMac Mem. at 1; see also Exs. E & G to Stip.

While it is not directly relevant to the resolution of this case, the Landlord describes the following facts concerning suite 1203, which IndyMac does not dispute. The Lease originally contemplated that the Lease for suite 1203 would commence when the Landlord delivered possession with the work substantially completed. See Lease § 2.01. The Landlord proposed hiring a certain contractor, but NSA would not approve this contractor. Affidavit of Joseph Antonacci, filed Apr. 1, 2008 (Docket # 84), ¶ 7. NSA found its own contractor, see id., and NSA and the Landlord signed a release stating that NSA would take responsibility for the work, see Release, dated May 11, 2007 (annexed as Ex. J to Stip.) ("Release"). In May 2007, the Landlord delivered keys to suite 1203 to the contractor hired by NSA so that the contractor could begin the work. Affidavit of Salim Kukaj, filed Apr. 1, 2008 (Docket # 85). This work was

never completed.

  B. Procedural History

  On August 16, 2007, IndyMac obtained an Order of Attachment against NSA's assets up to $2,349,150.00. See Docket # 6. A default judgment was entered in that amount on December 20, 2007. See Docket # 55.

  On October 11, 2007, IndyMac caused the U.S. Marshal to serve the Order of Attachment on the Landlord. See Process Receipt and Return, dated Oct. 11, 2007 (annexed as Ex. 8 to Stip.). That same day, the Landlord filed a non-payment proceeding against NSA in New York County Civil Court, requesting eviction and payment of unpaid rent and fees. See Ex. K to Stip. A judgment of possession in the Landlord's favor was granted on November 23, 2007. See Ex. F to Stip. ("Exhibit F"). The Landlord states that NSA was evicted on January 8, 2008. See Landlord Mem. at 4. That same day, IndyMac obtained an Order requiring Sitt Asset Management to show cause why it should not be compelled to turn over the funds attached on October 11. See Order to Show Cause, filed Jan. 9, 2008 (Docket # 57).

  IndyMac has now filed a motion seeking an order requiring the Landlord to turn over to Indymac the money NSA deposited with the Landlord in May 2007, plus interest. See Notice of Motion, filed Mar. 11, 2008 (Docket # 82). In the alternative, IndyMac moves for judgment against the Landlord. See id.

  IndyMac's first argument is that because the Landlord did not keep the deposits in a segregated account, but instead commingled the deposits with general funds, the Landlord has forfeited any right to the deposits. IndyMac Mem. at 3-5. In opposition, the Landlord asserts that NSA never paid any rent due under the lease and that the deposits should be used to offset

this debt. Landlord Mem. at 12-14. IndyMac counters that New York law does not allow rent in arrears to be offset by security deposits not properly segregated from general funds. IndyMac Mem. at 3-5.

Separately, Indymac argues that the lease never commenced due to the non-completion of alterations to the premises, and that NSA thus never owed any rent to the Landlord at all. IndyMac Mem. at 5-8. Because IndyMac's argument regarding commingling is meritorious, it is not necessary to reach this alternative argument

II.     DISCUSSION

    A.     Law Governing Turnover Proceedings

Fed. R. Civ. P. 69(a)(1) provides that "[t]he procedure on execution [of a money judgment] – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located." Under N.Y.C.P.L.R. § 5225(b), a party may seek an order requiring that a person turn over funds to satisfy a judgment. Fed. R. Civ. P. 69(a) makes section 5225(b) applicable in federal court. See Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A., 190 F.3d 16, 20-21 (2d Cir. 1999) (applying § 5225(b) pursuant to Rule 69(a)); HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2d Cir. 1995) (section 5225(b) is made "applicable in the District Court via Fed. R. Civ. P. 69(a)").

Section 5225(b) allows a judgment creditor to commence "a special proceeding" to require payment of money

> against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the

judgment creditor's rights to the property are superior to those of the transferee.[1]

The Second Circuit has summarized the proper application of N.Y.C.P.L.R. § 5225(b) as follows:

> [The statute] provides for a two-step analysis in determining whether property belonging to a judgment debtor – but in possession of a third party – should be turned over to a judgment creditor. First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," or it must find that "the judgment creditor's rights to the property are superior' to those of the party in whose possession it is. Only after both steps of the analysis are demonstrate" may the trial court order the transferee to turn over the property to the judgment creditor . . . .

Beauvais, 942 F.2d at 840-41 (citing Ley Lease Corp. v. Manufacturers Hanover Trust Co., 117 A.D.2d 560, 561-62 (1st Dep't 1986)); accord United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 988 F. Supp. 367, 374 (S.D.N.Y. 1997). In a special proceeding under N.Y.C.P.L.R. § 5225(b), "a court may grant summary relief where there are no questions of fact," but "it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." General Motors Acceptance Corp. v. Norstar Bank of Hudson Valley, 156 A.D.2d 876, 877 (1989); accord HBE Leasing Corp., 48 F.3d at 633; see also Port of N.Y. Authority v. 62 Cortlandt Street Realty Co., 18 N.Y.2d 250, 255 (1966) (summary judgment standard applies to special

---

[1] While there is case law holding that a special proceeding instituted in federal court under N.Y.C.P.L.R. § 5225(b) should be brought as a separate action, see Runaway Dev. Group v. Pentagen Techs. Intern. Ltd., 396 F. Supp. 2d 471, 474 (S.D.N.Y. 2005), other case law reflects that such applications have been brought as part of the main action. See Beauvais v. Allegiance Sec., Inc., 942 F.2d 838, 840-41 (2d Cir. 1991); Cordius Trust v. Kummerfeld, 2004 WL 616125, at *4 (S.D.N.Y. Mar. 30, 2004), aff'd in relevant part, 153 Fed. Appx. 761 (2d Cir. Oct. 4, 2005). Given that the Landlord has not objected to the procedure used here, it is not necessary to reach this question.

proceedings), cert. denied, 385 U.S. 1006 (1967).[2]

    B.    IndyMac's Claim to the Security Deposits

As noted, the Landlord concedes that it was paid $141,766.68 in security deposits (including the first month's rent advances) but asserts that it has applied the money towards NSA's obligations under the lease. IndyMac asserts that the security deposits in fact belong to NSA because the Landlord breached its duty under New York General Obligations Law § 7-103 to segregate the security deposit funds and not to commingle these funds with any other funds.

Section 7-103 provides:

> Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract or agreement when due, such money . . . shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same . . . .

N.Y.G.O.L. § 7-103(1). Where, as here, a landlord commingles deposited funds with general funds, the landlord is considered to have "worked a conversion" with respect to the deposit, and the effect is to give the tenant the "immediate" right to the commingled funds. Sommers v. Timely Toys, Inc., 209 F.2d 342, 343 (2d Cir. 1954); accord LeRoy v. Sayers, 217 A.D.2d 63, 68 (1st Dep't 1995); Spinelli v. Atteritano, 36 B.R. 819, 821 (Bankr. E.D.N.Y. 1984). The requirement in section 7-103 to segregate funds applies to both security deposits and rent

---

[2] IndyMac did not follow Rule 56 in making its motion for relief. Nonetheless, as the relevant facts are undisputed, it is appropriate to treat the motion as one for summary judgment. See HBE Leasing Corp., 48 F.3d at 633 (reviewing turnover order after noting that the district court had "implicitly treated the parties' submissions as motions for summary judgment" and "finding that no material facts were in dispute, [had] entered judgment without a trial on the basis of the affidavits and appended exhibits").

advances. See LeRoy, 217 A.D.2d at 69.

The Landlord agrees that the statute governs the deposited funds but asserts that it was entitled to apply these funds to any moneys due under the lease. Normally, "'[t]he right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.'" Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002) (quoting In re Malinowski, 156 F.3d 131, 133 (2d Cir. 1998)). While debts applied as part of a setoff may arise from different transactions, Kemper Reins Co. v. Corcoran (In re Midland Ins. Co.), 79 N.Y.2d 253, 259-60 & n.2 (1992), the debts and credits must be "mutual," Westinghouse Credit, 278 F.3d at 149 (citing In re Westchester Structures, Inc., 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995); Beecher v. Peter A. Vogt Mfg., 227 N.Y. 468, 473 (1920)). "'[D]ebts and credits are mutual when they are 'due to and from the same persons in the same capacity.'" In re Midland Ins. Co., 79 N.Y.2d at 259 (quoting Beecher, 227 N.Y. at 473); accord Westinghouse Credit, 278 F.3d at 149. "Claims 'lack the quality of mutuality' where one party 'asserts the right of a cestui que trust against a trustee [and] the other asserts a contractual obligation of a debtor to his creditor.'" Westinghouse Credit, 278 F.3d at 149 (quoting In re Consol. Indem. & Ins. Co., 287 N.Y. 34, 38-39 (1941)).

That is precisely the situation here. N.Y.G.O.L. § 7-103 changes the relationship between landlord and tenant "from debtor-creditor to trustee-cestui que trust." In the Matter of Perfection Technical Servs. Press, Inc., 22 A.D.2d 352, 356 (2d Dep't 1965), aff'd, 18 N.Y.2d 644 (1966). As a result, case law is clear that there can be no mutuality between a landlord's obligation to repay the deposit upon commingling and any monetary obligation the tenant may

have to the landlord.  See Fore Improvement Corp. v. Selig, 278 F.2d 143, 145 (2d Cir. 1960).  Thus, because their obligations are not mutual, the "commingling landlord [may not] set off claims against the deposit," Matter of Perfection, 22 A.D.2d at 356, such as rent.  Accord Dan Klores Assocs., Inc. v. Abramoff, 288 A.D.2d 121, 121-22 (1st Dep't 2001) (landlord who commingled security deposit must refund deposit and may not use the deposit to "offset . . . justifiable repair costs"); McMaster v. Pearse, 9 Misc. 3d 964, 966-67 (N.Y. City Civ. Ct. 2005) ("if the landlord fails to segregate properly a security deposit . . . . the right to a refund is immediate and shall not be delayed or postponed until the resolution of a landlord's claim for some or all of the security deposit"); Rhodes v. Calhoun, 9 Misc. 3d 1115(A), 2005 WL 2428357, at *3 (N.Y. Dist. Ct. Sept. 29, 2005) (landlord who commingled security deposit has "no claim to the security deposit").  Courts have noted that while such an outcome "may on occasion yield harsh results," Spinelli, 36 B.R. at 822, such "highly technical . . . statutes frequently have to be literally construed to obtain the desired compliance," Fore Improvement, 278 F.2d at 146.  Notably, courts have specifically found that the act of commingling causes the landlord to lose its right to deposited funds such that the landlord may be directed to release the deposited funds to satisfy the claims other parties have against the tenant.  See State by Abrams v. Thwaites Places Assocs., 155 A.D.2d 3, 9 (1st Dep't 1990) ("We note . . . that commingling effects a conversion, giving the tenants entitlement to the immediate recovery of their deposits.  Its bars the landlord from claiming a setoff for rent against a trustee in bankruptcy, an assignee for the benefit of creditors and, by implication, a receiver in a foreclosure action." (citations omitted)); L&B 57th Street, Inc. v. E.M. Blanchard, Inc., 143 F.3d 88, 91 (2d Cir. 1998) (landlord commingled security deposit by spending it after tenant breached lease; court ruled that

the commingling of the security deposit meant that tenant's debt should be reduced by amount of security deposit, thus relieving third party guarantor of liability); Spinelli, 36 B.R. at 821 ("In the event the tenant files a petition in bankruptcy subsequent to the commingling of a security deposit by his landlord, the trustee in bankruptcy succeeds to the rights of the tenant and may thus require a turnover of the converted funds. Where the tenant files a petition in bankruptcy after having defaulted under the terms of a lease, the commingling landlord is precluded from setting-off the security deposit against tenant's obligation [to pay rent]." (citations omitted)).

Thus, in the case of Matter of Perfection, 22 A.D.2d 352, the Second Department applied these principles to a turnover proceeding filed by a tenant's creditor against a landlord who had commingled deposit funds. The Second Department held that despite any rent in arrears the tenant may have owed the landlord, "[t]here were no 'mutual debts' which could be set off within in the meaning of the statute," and that to allow such a setoff would be "to treat the deposit as a debt and the landlord as a debtor – precisely the situation [the statute] was enacted to change." Id. at 356. The court ordered the landlord to turn over the deposit funds to the creditor. See also Matter of Ideal Reliable Sundries, Inc., 49 A.D.2d 852, 852 (1st Dep't 1975) (affirming order that landlord turn over security deposit funds to tenant's creditors because landlord commingled funds); cf. Glass v. Janbach Properties, Inc., 73 A.D.2d 106, 107 (2d Dep't 1980) ("absent the improper commingling of funds, the landlord has the right to retain the security deposit," and the tenant's creditors cannot reach it).

Because the Landlord here had a duty to segregate the funds, he was a trustee of those funds and there is no mutuality with respect to any rent in arrears NSA may owe to the Landlord. Under New York case law, the Landlord cannot assert the rental debt as a setoff against the

9

deposited funds.

The Landlord's only argument in its defense arises from its citation to Pollack v. Springer, 196 Misc. 1015 (N.Y. Sup. Ct. App. Term 1949), in which the court ruled in a one-paragraph opinion that a landlord who had commingled a tenant's security deposit but who had obtained a money judgment against a tenant for rent due could apply the security deposit to satisfy the judgment. The Landlord here points to the judgment it obtained in the state court, see Exhibit F, and asserts that Pollack supports the conclusion that it should be able to apply the security deposit to satisfy the rent NSA owes, Landlord Mem. at 13-14.

Pollack, however, cannot save the Landlord from the consequences of its commingling. As an initial matter, the court in Matter of Perfection declined to follow Pollack, citing a lack of authority for its position, 22 A.D.2d at 356, and noting that the decision has been called into question for its lack of reasoning, see Fore Improvement Corp., 278 F.2d at 148 (J. Friendly concurring). Indeed, it appears that not a single court has followed the holding of Pollack relied on by the Landlord. More fundamentally, Pollack has no applicability here because Pollack involved the effect of a money judgment obtained by a landlord. Here, the Landlord has never obtained a money judgment. Rather, it obtained a judgment of possession. See Exhibit F. Nothing in that judgment addresses the amount of rent owing. Indeed, while the form judgment has a line referring to a "money judgment," the amount of that money judgment is listed as "$0.00." See Exhibit F. Thus, even if Landlord is correct that a judgment for rent in arrears would allow it to use the security deposit funds to set off the judgment amount, there is no judgment amount here to set off.

Accordingly, IndyMac, as NSA's judgment creditor is entitled to a turnover order of the

security deposits NSA made with the Landlord.

Conclusion

180 Madison Owners, LLC, and Sitt Asset Management, LLC, should be directed to pay to IndyMac the sum of $141,766.68 plus pre-judgment interest.  As neither party has provided any briefing on the amount or rate of interest, the parties should be directed to provide such briefing prior to entry of judgment.

### PROCEDURE FOR FILING OBJECTIONS TO THIS
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (e).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Swain.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: August 14, 2008
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

security deposits NSA made with the Landlord.

Conclusion

180 Madison Owners, LLC, and Sitt Asset Management, LLC, should be directed to pay to IndyMac the sum of $141,766.68 plus pre-judgment interest. As neither party has provided any briefing on the amount or rate of interest, the parties should be directed to provide such briefing prior to entry of judgment.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: August 14, 2008
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge